UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD SEPULVEDA,<br><br>Plaintiff,<br><br>v.<br><br>MOJEEB AHMED ALOMARI, et al.,<br><br>Defendants. | Case No. 23-cv-01443-TSH<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 60, 62 |

## I.  INTRODUCTION

Plaintiff Richard Sepulveda is an individual with a disability. He brings this case against Defendants Mojeeb Ahmed Alomari and Adel M. Aldafari, both individually and dba Mi Ranchito Market, and Mi Ranchito Market #2, alleging claims under the American with Disabilities Act and related state law claims stemming from barriers he encountered at Mi Ranchito Market. Pending before the Court are Defendants' Motion for Summary Judgment (ECF No. 60)[1] and Sepulveda's Motion for Partial Summary Judgment (ECF No. 62)). The Court finds these motions suitable for disposition without oral argument and **VACATES** the May 15, 2025 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **DENIES** Defendants' motion and **GRANTS** Plaintiff's motion.[2]

---

[1] Although the notice is titled as "Notice of Mojeeb Alomari's Motion for Summary Judgment," Defendants subsequently clarified that their motion is brought on behalf of all named Defendants. ECF No. 70.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 8, 44.

## II. BACKGROUND

Plaintiff is limited in the use of his legs and uses a walker, sometimes needing to sit in his walker and wheel around like a wheelchair. Sepulveda Decl. ¶ 1, ECF No. 62-2. He suffers from lumbar disc disease and degenerative arthritis in his joints, including his back and knees. *Id*. "These conditions cause [him] difficulty when using certain facilities, especially when they are not in compliance with reach distances and width measurements as provided for in federal and state disability access laws." *Id.*

Alomari and Aldafari own Mi Ranchito Market, located at 3326 Foothill Boulevard in Oakland, California. Compl. ¶ 7, ECF No. 1; Answer ¶ 7, ECF No. 37; Defs.' Response to Pl.'s Statement of Facts ¶ 3, ECF No. 65-1. When he filed this lawsuit, Plaintiff lived in Oakland, about four miles from the market, but he subsequently moved to Manteca, over 60 miles away. Sepulveda Decl. ¶ 2. While he now lives in Manteca, Plaintiff states: "I continue to receive frequent medical attention at the Veterans Administration health facilities in Oakland, among them, the Veteran's Hospital in Oakland, California, which is not far from this business." *Id.* Plaintiff also states he "lived in Oakland, on and off, for decades, and I have long-standing ties to the area in addition to my ongoing medical care there." *Id.*

On July 9, 2022 and January 25, 2023, Plaintiff visited Mi Ranchito Market but was deterred from returning due to the following barriers he encountered:

> a. Interior: The service counter for sales had various objects in front of it that partially blocked access to it. This forced me to have to lean forward to grasp the purchased items and to pay. Because of my medical condition, this was painful for me. These reach ranges violated ADAAG 4.2.5 (1991 standards).
>
> b. Interior: Some of the aisles inside the Business were too narrow and caused difficulty to move about, turn at the end of aisles, and shop. In some places, the aisles were less than 36 inches wide, and also less than 44 inches wide when serving both sides, and less than 48 inches at the turns, in violation of ADAAG 4.2 and 4.3 (1991), ADAS 403.5.1 (2010), and CBC 11B-403.5.1 and CBC 11B-403.5.2. This made it more difficult and laborious for me to move about and shop, as I had to be careful to avoid bumping into displayed products and knocking them to the floor. Also, I observed the employee of the Business watching me with concern as I moved in the narrow aisles. This made me feel embarrassed. Some of the aisles were so narrow that I could not get my walker through. This prevented me from fully shopping for all available products and made me feel like a second-

> class citizen. Some of the aisles were so narrow that my walker could not even fit.
>
> c. Interior: Alcove, or "T-shaped" area: There were alcove areas that were very narrow and almost impossible to enter with a walker. These conditions were in violation of ADAAG 5.3 (1991 standards) (36 inches width), ADAAG 206.2.2 and 304.3.1 (2010 standards) (60 inches turning circle), and CBC 11B-206.2.2, 11B-206.3, and 11B-304.3.2 (alcove aka "T-Shaped Space" must have 60 inch turning circle). One of the alcoves was 24 inches wide; another was 27 inches wide.
>
> d. Exterior: The path of travel from the public sidewalk to the entrance had a slope of more than two percent, in violation of the rules for an "Accessible Route," ADAAG 4.3(1) (1991 standards), ADAAG 206.2.1 and 402, 402.2 (slope 1:20)(2010 standards), and ADAAG 303 (1/4 inch change in level) (2010 standards), as well as CBC 11B-206.2.1, 11B-403.4 (changes of level)(referencing 11B-303 "Changes in level," ¼ inch max). This made it more difficult for me to push the walker up slope to get inside.

*Id.* ¶ 3.

On March 28, 2023, Plaintiff filed this action for injunctive and declaratory relief under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., California's Disabled Persons Act, Cal. Civ. Code §§ 54, 54.1, 54.3, California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 51.5; and the California Health and Safety Code. *See generally* Compl. He seeks statutory damages under the Unruh Act and Disabled Persons Act.

On January 30, 2024, the parties conducted a joint site visit. Licensed civil engineer Roberto Cortez performed an inspection and prepared an expert report. *See* Cortez Decl., ECF No. 62-3; Cortez Report, *id*. Cortez identified several conditions at Mi Ranchito Market that do not comply with certain state and federal regulations on physical accessibility, including floor mats, narrow shelves and alcoves, objects blocking the meat display case and cashier station, and the need to install a service counter on one side of the meat display. Cortez Decl. ¶¶ 6-10.

### III. LEGAL STANDARD

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*

3

1  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome
2  of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a
3  reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477
4  U.S. 242, 248 (1986).

5        If the moving party meets its initial burden, the opposing party must then set forth specific
6  facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S.
7  at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving
8  party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However, it is not the
9  task of the Court "'to scour the record in search of a genuine issue of triable fact." *Keenan v.*
10 *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden "to identify with
11 reasonable particularity the evidence that precludes summary judgment."  *Id.*; *Cafasso, U.S. ex rel.*
12 *v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (The nonmoving party "must
13 set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.")
14 (citations omitted).  Thus, "[t]he district court need not examine the entire file for evidence
15 establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with
16 adequate references so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*,
17 237 F.3d 1026, 1031 (9th Cir. 2001); *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626
18 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.")
19 (citations omitted).

20       "While the evidence presented at the summary judgment stage does not yet need to be in a
21 form that would be admissible at trial, the proponent must set out facts that it will be able to prove
22 through admissible evidence."  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010)
23 (citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must
24 be made on personal knowledge, set out facts that would be admissible in evidence, and show that
25 the affiant or declarant is competent to testify on the matters stated.")).  If the nonmoving party
26 fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not
27 significantly probative, summary judgment may be granted."  *Anderson,* 477 U.S. at 249–50
28 (citations omitted).

## IV.   DISCUSSION

In his motion, Plaintiff seeks "to establish the fact that (1) the Barriers existed on the Visit Dates, (2) plaintiff encountered the Barriers on the Visit Dates, and (3) the barriers continue to exist, requiring an injunction." Pl.'s Mot. at 6.  In their motion, Defendants argue Plaintiff lacks standing to pursue injunctive relief under the ADA "because he has no genuine intent, need, or concrete plans to return to Los Primos Market." Defs.' Mot. at 2.  Because the Court must first establish jurisdiction, it begins its discussion with Defendants' motion.

### A.   Standing

"To establish standing, as [the Supreme] Court has often stated, a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (collecting cases).  "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Johnson v. Jew*, 2021 WL 3621828, at *4 (N.D. Cal. Aug. 16, 2021) ("Even at summary judgment—where Plaintiff's burden of showing standing is greater than at the pleading stage—relatively 'minimal allegations' support ADA standing.") (citing *Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009) (per curiam)).

"Private plaintiffs are limited to seeking injunctive relief under Title III of the ADA, so a plaintiff suing a place of public accommodation must show a sufficient likelihood of injury in the future to establish standing." *Langer v. Kiser*, 57 F.4th 1085, 1092 (9th Cir. 2023).  Under the ADA, a plaintiff "must establish a sufficient future injury by alleging that they are either currently deterred from visiting the place of public accommodation because of a barrier, or that they were previously deterred and that they intend to return to the place of public accommodation, where they are likely to reencounter the barrier." *Id.* at 1094.  In other words, a plaintiff can show a future injury under the ADA by presenting evidence that they are either (1) currently deterred from returning, or (2) intending to return despite the barrier.

1    Defendants argue Plaintiff fails to establish any credible intention to revisit Mi Ranchito
2 Market because he now lives too far away "and has provided no specific plans, commitments, or
3 reasons necessitating his return." Defs.' Mot. at 2-3.  However, "where, as here, the public
4 accommodation being sued is far from the plaintiff's home" the Ninth Circuit has "found actual or
5 imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return
6 to the geographic area where the accommodation is located and a desire to visit the
7 accommodation if it were made accessible." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d
8 1031, 1037 (9th Cir. 2008) (finding that the Sacramento plaintiff adequately alleged an intent to
9 return and stay at a Santa Barbara hotel where she offered evidence that she visited Santa Barbara
10 one to three times a year, had three specific trips planned for that year, and had specific reasons
11 related to the "hotel's style, price, and location" for wanting to stay at that particular hotel); *see
12 also Doran v. 7-Eleven, Inc.*, 524 F. 3d 1034 (9th Cir. 2008) (finding the plaintiff established that
13 he was deterred from returning to a 7-Eleven that was 550 miles from his home given his
14 allegations that he had visited the 7-Eleven 10-20 times in the past, the 7-Eleven was located near
15 his favorite restaurant in the area, and he intended to go to the area during his annual Disneyland
16 trips); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1035 (9th Cir. 2002) (finding the
17 plaintiff adequately alleged that he was deterred from visiting a grocery store located 70 miles
18 from his home where he stated in his declaration that it was his favorite grocery store and that he
19 visited the area every week to see his grandmother).

20    Plaintiff alleges he "plans to return to the Business when this public accommodation is
21 made accessible," but the barriers he encountered deter him from returning. Compl. ¶¶ 5, 14.  He
22 states he "was deterred from returning on March 20, 2023 due to the ongoing presence of the
23 barriers." Sepulveda Decl. ¶ 3.  Although he now lives in Manteca, Plaintiff states he continues to
24 receive frequent medical attention at the Veterans Administration health facilities in Oakland,
25 including the Veteran's Hospital at 2221 Martin Luther King Jr. Way in Oakland, which is about
26 five miles from Mi Ranchito Market. *Id.* ¶ 2.  Plaintiff also states he "lived in Oakland, on and
27 off, for decades, and I have long-standing ties to the area in addition to my ongoing medical care
28 there," and "[t]here are many Latino restaurants and stores, and other restaurants and stores, in this

1    area that I like to visit." *Id.* Viewing this evidence in the light most favorable to the nonmoving

2    party, the Court finds Plaintiff's statements are evidence that creates a genuine dispute of material

3    fact. *See Sepulveda v. Perez*, No. 23-CV-03897-EMC, ECF No. 50, at *1 (where Sepulveda sued

4    a restaurant at 3829 Foothill Blvd., Oakland, CA, one-half mile from Mi Ranchito Market, court

5    granted default judgment, finding he "sufficiently established that he has standing to seek

6    injunctive relief," despite now living in Manteca, because "he still regularly returns to Oakland to

7    receive medical care at the Oakland VA Clinic") (N.D. Cal. Feb. 9, 2025); *Hernandez v. Amidron*

8    *Energy, LLC*, 2023 WL 8421043, at *6 (N.D. Cal. Dec. 4, 2023) ("Plaintiff is only required to

9    show deterrence or intent to return. . . .  The Court finds that Plaintiff presented evidence to create

10   a genuine issue of material fact regarding whether he is deterred, therefore Plaintiff is not required

11   to also show his intent to return despite the barrier.") (citing *Chapman v. Pier 1 Imports (U.S.)*

12   *Inc.*, 631 F.3d 939, 944 (9th Cir. 2011)); *cf Sepulveda v. Alzamzami*, 2025 WL 1085071, at *1

13   (N.D. Cal. Apr. 10, 2025) (granting defendants' motion for summary judgment because market at

14   issue was in San Pablo, but Sepulveda had not shown he still visits San Pablo, instead only

15   showing he goes to Oakland for doctor appointments and occasionally visits his attorney's office

16   in Richmond).

17       In their motion, Defendants rely on *Molski v. Mandarin Touch Rest.*, 385 F. Supp. 2d

18   1042, 1045 (C.D. Cal. 2005), in which a district court found an ADA plaintiff lacked standing

19   after balancing four factors identified by another district court: "(1) the proximity of the place of

20   public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's

21   business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of

22   travel near defendant." *Id.* (citing *Molski v. Arby's Huntington Beach*, 359 F.Supp.2d 938, 947

23   n.10 (C.D. Cal. 2005)). Based on that case, Defendants contend Plaintiff's alleged plan to return

24   to Mi Ranchito Market is not sufficiently concrete or definitive because he lives approximately 60

25   miles away and, during his deposition, he was unable to identify grocery stores in the Oakland

26   area that he had visited more than once. Defs.' Mot. at 5-8. "But none of those allegations are

27   necessary. Whatever the potential merits of the test the [*Molski*] court used, it is not controlling

28   precedent." *Johnson v. Simper Investments, Inc.*, 2021 WL 4749410, at *3-4 (N.D. Cal. Oct. 12,

2021) (declining to adopt the four factor test and denying motion for summary judgment on standing grounds where plaintiff claimed he would return to the business to: (1) inquire about the services once ADA accessible parking was provided there; and (2) confirm that the business was complying with the ADA)); *see also Stiner v. Brookdale Senior Living, Inc.*, 2024 WL 3498492, at *4 (N.D. Cal. July 22, 2024) (Plaintiff "is not required to furnish this level of detail. While some courts in this circuit have evaluated factors such as a plaintiff's frequency of travel to an establishment and her past patronage of it in order to assess whether that plaintiff faces imminent future injury, the Ninth Circuit has not adopted such a test."); *Johnson v. Jew*, 2021 WL 3621828, at *6 ("[T]he four-factor test in these cases is not a controlling test for assessing Plaintiff's standing."); *Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1343 (E.D. Cal. 2020) ("Since this test was first articulated fifteen years ago . . . the Ninth Circuit has not adopted it despite having confronted the same or similar issue repeatedly")). The Court finds Plaintiff is not required at this stage to prove his past patronage of the market or detail the goods he might later buy because, when viewed in the light most favorable to Plaintiff, the facts demonstrate there are genuine disputes of material facts regarding his intention to revisit Mi Ranchito Market.

Defendants also argue "Plaintiff's inability to articulate any intent to return reveals that his claim is in fact driven by litigation motives rather than a genuine need for accessible services at this location." Defs.' Mot. at 3. They maintain his behavior "aligns with that of a serial filer exploiting the ADA for personal profit rather than advocating for meaningful access." *Id.* at 14. However, Plaintiff's history as a serial litigant "has no place in our standing analysis." *Langer*, 57 F.4th at 1094. The Ninth Circuit has repeatedly rejected district courts making adverse credibility determinations based on past ADA litigation. *See, e.g., D'Lil*, 538 F.3d at 1034–39 (rejecting district court's adverse credibility finding against a plaintiff who travels around the country to find ADA violations because the court used her past ADA litigation to doubt her intent to return); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007) ("For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations

1    will be compliant with the ADA."). Thus, while Defendants appear to question the veracity of

2    Plaintiff's statement that he is in fact deterred, "reaching a contrary conclusion requires a

3    credibility determination inappropriate for summary judgment." *Hernandez*, 2023 WL 8421043,

4    at *10.

5        In sum, the Court finds there are genuine disputes of material facts regarding Plaintiff's

6    intention to revisit Mi Ranchito Market. The Court therefore **DENIES** Defendants' motion for

7    summary judgment.

8    **B.     Plaintiff's Motion for Partial Summary Judgment**

9        Plaintiff seeks to establish that (1) the barriers existed on the dates he visited Mi Ranchito

10   Market, (2) he encountered the barriers on the visit dates, and (3) the barriers continue to exist,

11   requiring an injunction. Pl.'s Mot. at 6. Defendants spend all but two pages of their opposition

12   restating the same arguments they made in their motion regarding standing. For the reasons stated

13   above, these arguments are without merit. As to the arguments raised in Plaintiff's motion,

14   Defendants do not argue that no barriers exist at Mi Ranchito Market but instead argue "[t]he

15   allegations in Plaintiff's Complaint fail to identify any barriers that are related to Plaintiff's

16   specific mobility limitations." Pl.'s Opp'n at 22. They argue Plaintiff "has admitted that he uses a

17   walker, not a wheelchair," and the findings of their expert, Certified Access Specialist Jason

18   James, "categorically refute the presence of any barriers that would impede access for someone in

19   Plaintiff's condition." *Id.*

20   **1.     Legal Standard**

21   Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, at issue in this case, prohibits

22   discrimination in public accommodations, providing: "No individual shall be discriminated against

23   on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

24   privileges, advantages, or accommodations of any place of public accommodation by any person

25   who owns, leases (or leases to), or operates a place of public accommodation." *Id.* § 12182(a). In

26   simpler terms, owners of "places of public accommodation" have a duty to make sure that

27   individuals with disabilities can fully enjoy the facilities. *Lopez v. Catalina Channel Express,*

28   *Inc.*, 974 F.3d 1030, 1038-39 (9th Cir. 2020). "The statute provides a 'comprehensive,' 'broad

mandate' to eliminate discrimination against disabled persons, addressing both 'outright intentional exclusion' as well as the 'failure to make modifications to existing facilities and practices.'" *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014) (citation omitted). To prevail on a discrimination claim under Title III, Sepulveda must set forth a *prima facie* case showing that: (1) he is disabled within the meaning of the ADA, (2) Defendants are private entities that own, lease (or lease to), or operate a place of public accommodation and (3) he was denied public accommodations by Defendants because of his disability. *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc*., 603 F.3d 666, 670 (9th Cir. 2010).

The regulations implementing the ADA provide that "[a] public accommodation shall remove architectural barriers *in existing facilities* . . . where such removal is readily achievable, *i.e.*, easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(a) (emphasis added); *see also Chapman*, 631 F.3d at 945 ("In the context of existing facilities, discrimination includes 'a failure to remove architectural barriers . . . where such removal is readily achievable.'" (citing 42 U.S.C. § 12182(b)(2)(A)(iv)). *Simper Investments, Inc.*, 2021 WL 4749410, at *4 (citing *Chapman*, 631 F.3d at 945). Promulgated by the U.S. Attorney General to implement the provisions of the ADA, the Accessibility Guidelines lay out the technical structural requirements of places of public accommodation. *See Chapman*, 631 F.3d at 945. The 1991 ADA Accessibility Guidelines ("1991 Standards") provide, among other things, parking accessibility requirements regarding the designation and signage of parking spaces, and the width and slope level of the parking spaces, access aisles, and passenger loading zones. *See* 28 C.F.R. Pt. 36, App. D, § 4.6. In 2010, though, the U.S. Department of Justice published final regulations revising existing ADA regulations and updating the ADA Standards for Accessible Design ("2010 Standards"). The 2010 Standards contain a "safe harbor" provision that exempts an existing facility's element from its technical requirements if the facility's element has not been altered on or after March 15, 2012 and already complies with the 1991 Standards. 28 C.F.R. § 36.304(d)(2)(i). However, elements in existing facilities that do not comply with the 1991 Standards must be modified to the extent readily achievable to comply with the 2010 Standards. 28 C.F.R. § 36.304(d)(2)(ii)(B).

### 2. Analysis

As a preliminary matter, although Defendants seem to take issue with Plaintiff's status as a disabled person, the Court finds he qualifies as a person with a disability as defined by the ADA. The ADA defines the term "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A). "Major life activities" include, among other things, walking. 42 U.S.C. § 12102(2)(A). As Plaintiff is limited in his ability to walk and uses a walker for mobility, he satisfies the first element of an ADA claim. *See Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 984 (9th Cir. 2014) (a plaintiff who is unable to walk without the use of a mobility aid such as a wheelchair is disabled within the meaning of the ADA); *Sepulveda v. Buelna*, 2021 WL 3411197, at *5 (N.D. Cal. July 17, 2021), *report and recommendation adopted*, 2021 WL 3409294 (N.D. Cal. Aug. 4, 2021) (finding Sepulveda disabled under the ADA because he is limited in his ability to walk and uses a walker for mobility); *Sepulveda v. Cong*, 2020 WL 7232900, at *4 (N.D. Cal. Nov. 9, 2020), *report and recommendation adopted as modified*, 2020 WL 7227202 (N.D. Cal. Dec. 8, 2020) ("Plaintiff is disabled, as he is limited in the use of his legs and must use a walker.").

Further, there is no dispute that Mi Ranchito Market is a place of public accommodation. The ADA expressly provides that "private entities are considered public accommodations . . . if the operations of such entities affect commerce." 42 U.S.C. § 12181(7). The definition of public accommodation includes "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment." *Id*. § 12181(7)(E). The ADA also provides that owners and lessors of places of public accommodation are expressly responsible for ensuring compliance. 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the . . . accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."). As such, the Court turns to the question of whether Plaintiff was denied access to the property based on his disability.

The standard for determining whether a facility is readily accessible and usable by an individual with a disability depends on whether the facility is an existing facility or new

construction. For existing facilities that were constructed before the passage of the ADA (*see* Compl. ¶ 3), the ADA provides that discrimination arises from the "failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Readily achievable means "easily accomplishable and able to be carried out without much difficulty or expense." *Id*. § 12181(9); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Defendants argue there are no barriers that affect Plaintiff because he uses a walker and not a wheelchair. However, "[u]nder the ADA, when a disabled person encounters an accessibility barrier violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way . . . . Rather, the barrier need only interfere with the plaintiff's 'full and equal enjoyment' of the facility." *Chapman*, 631 F.3d at 947. Plaintiff states he is limited in the use of his legs and uses a walker, sometimes needing to sit in his walker and wheel around like a wheelchair. Sepulveda Decl. ¶ 1. "These conditions cause [him] difficulty when using certain facilities, especially when they are not in compliance with reach distances and width measurements as provided for in federal and state disability access laws." *Id.* As such, the Court finds Plaintiff has established barriers that interfere with his fully and equal enjoyment of the facility based on his disability. *Chapman*, 631 F.3d at 947 ("[I]f a barrier . . . relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA."); *Powers v. Mad Vapatory LLC*, 2020 WL 3402245, at *3, 4 (N.D. Cal. June 19, 2020) (finding plaintiff adequately alleged lack of full and equal access where purported barriers made it difficult for him to access a store, despite defendants' argument that plaintiff "is a 'heavily muscular' man and that his 'amputated leg does not prevent him from functioning in any less capacity than the average non-disabled individual,'" where he encountered specified barriers and alleged facts stating how those purported barriers made it difficult for him to access the facility). Finally, there is no evidence establishing that these barriers no longer exist. Accordingly, the Court **GRANTS** Plaintiff's motion for partial summary judgment and finds that (1) the barriers existed on the dates he visited Mi Ranchito Market, (2) he encountered the barriers on the visit dates, and (3) the barriers continue to exist.

Assuming the Court were to find in his favor on these issues, Plaintiff also requests the

1   Court grant summary judgment in his favor as to his claims for injunctive relief and damages.

2   Pl.'s Mot. at 19.  The Court declines to make such a finding.  The Ninth Circuit has adopted a

3   burden-shifting framework whereby plaintiffs have the initial burden at summary judgment of

4   plausibly showing that the removal of an architectural barrier is "readily achievable."  *Lopez*, 974

5   F.3d at 1038-39.  The ADA defines the phrase "readily achievable" as "easily accomplishable and

6   able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9); 28 C.F.R. §

7   36.104.  To meet this burden, a plaintiff must "articulate a plausible proposal for barrier removal,

8   the costs of which, facially, do not clearly exceed its benefits."  *Lopez,* 974 F.3d at 1038 (adopting

9   Second Circuit standard, citation omitted).  If a plaintiff satisfies this burden, they have made out a

10  *prima facie* case of discrimination, after which the burden shifts to the defendant, who must

11  present sufficient evidence to rebut such a showing and who bears "the ultimate burden of

12  persuasion that barrier removal is not readily achievable."  *Id*. at 1040.  Determining whether an

13  action is "readily achievable" involves consideration of four factors:

> (A) the nature and cost of the action needed; (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

21  42 U.S.C. § 12181(9)(A)-(D).  As Plaintiff has made no such showing here, summary judgment on

22  his claims is inappropriate.

### V.   CONCLUSION

24  Based on the analysis above, the Court hereby **DENIES** Defendants' motion and

25  **GRANTS** Plaintiff's motion for a finding that (1) the barriers existed on the dates he visited Mi

26  Ranchito Market, (2) he encountered the barriers on the visit dates, and (3) the barriers continue to

27  exist.  As to whether Plaintiff has established any of his causes of action, the Court declines to

28  make such a finding here.

13

1   The Court shall conduct a case management conference on June 12, 2025 at 10:00 a.m. by
2   Zoom video conference. The webinar link and instructions are located at
3   https://cand.uscourts.gov/judges/hixson-thomas-s-tsh/. This conference shall be attended by lead
4   trial counsel. By June 5, 2025, the parties shall file a Joint Case Management Statement
5   containing the information in the Standing Order for All Judges in the Northern District of
6   California, available at: http://cand.uscourts.gov/tshorders. The Joint Case Management
7   Statement form may be obtained at: http://cand.uscourts.gov/civilforms.

**IT IS SO ORDERED.**

Dated: May 7, 2025

THOMAS S. HIXSON
United States Magistrate Judge